# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00161-CV

---

**KBCB Investments, LLC, Appellant**

**v.**

**Terry Black, Appellee**

---

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 19-0-327, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In one issue, KBCB Investments, LLC (KBCB) contends that the trial court abused its discretion by denying KBCB's application for a temporary injunction. For the following reasons, we affirm.

## BACKGROUND

Kent Black and Terry Black are brothers.[1] In September 2012, the brothers' parents owned Northside Grocery and Market, Inc. (Northside), and Northside owned real property (the Property) with buildings (the Premises) that it leased to Terry. Terry signed the 2012 lease as the tenant and on Northside's behalf as its president.[2] Prior to signing the lease,

---

[1] We refer to the brothers by their first names because they have the same last name.

[2] The record reflects that in 2013, Terry was notified that he was no longer on Northside's board of directors or its president and that after 2013, Kent was the president of Northside.

Terry had been using the Premises for many years as his office for his accounting business. The initial term of the lease was five years with an automatic renewal "for an additional five (5) periods of five (5) years per renewal term, a total of twenty-five (25) years, unless the Tenant gives written notice of termination" within a specified time, and the amount of monthly rent is "$0.00." Among his obligations under the lease, Terry was responsible for maintaining insurance on his personal property and paying all utilities and services incurred in connection with the Premises.

In January 2019, Kent and his wife created KBCB, and KBCB acquired the Property, "as well as all the rights and obligations under the purported lease."[3] In July 2019, KBCB sued Terry seeking a declaratory judgment that the lease, which was attached to KBCB's petition, was void for lack of consideration and that Terry "should be ordered to vacate the Property." After the case had been pending for one year, KBCB moved for partial summary judgment on the grounds that the lease and any purported renewal of the lease were void for lack of consideration, unconscionable, and unenforceable. KBCB's evidence supporting its motion included a copy of the lease.

Terry filed a response to the motion for partial summary judgment with evidence to support that their father was aware of, consented, and approved the lease and its terms; that Terry was authorized to sign leases on behalf of Northside; that Terry personally paid $30,000 to improve the Property and provided tax and general accounting services for his parents and Northside free of charge or "for a deeply discounted rate" prior to and after the lease was signed;

---

[3] According to KBCB's pleadings, Kent acquired Northside and changed its name to Black's Barbecue, Inc.; Black's Barbecue owned the Property "until January 28, 2019 when it was contributed to its current owner, [KBCB] as part of a consolidation of the real estate holding of entities owned by Kent and Candice Black"; and "[t]he purported Lease was also assigned to [KBCB] on the same day."

that Kent was aware of the lease in 2014; that Northside[4] decided not to pursue legal action in 2014 concerning the lease; and that Kent had officed on property owned by Northside without paying rent or having a lease for more than four years. Terry also relied on his asserted affirmative defenses, including waiver and estoppel.

In February 2021, the trial court denied KBCB's motion for partial summary judgment, and in April and August 2021, KBCB filed second and third amended petitions to assert a claim of trespass to real property, seeking among its requested relief, damages for "lost rental profits" and temporary injunctive relief "preventing [Terry] from entering, occupying, or permitting third parties to enter the Property."[5] An affidavit by Kent with a copy of the lease was attached to the third amended petition. Kent averred that "the purported lease was transferred to [KBCB]" in 2019. Terry filed a response to KBCB's application for temporary injunction and attached and relied on evidence that he also had attached to his response to KBCB's motion for partial summary judgment.

Later in August, the trial court held a hearing on KBCB's application for a temporary injunction. Kent and his mother testified.[6] The mother testified that she was involved in the family business, that she did not give permission and Terry did not ask her for permission to sign the lease, that she became aware of the lease "a few months ago," and that she was aware that Terry had been occupying the Property for some time and without paying rent prior to September 2012. In his testimony, Kent identified Plaintiff's exhibit A as the lease and admitted

---

[4] We refer to Northside, although its name was changed to Black's Barbecue, Inc.

[5] KBCB's amended petitions joined additional defendants, including several business entities related to Terry, but the trial court has dismissed the claims against the other defendants, and they are not parties to this interlocutory appeal.

[6] Kent testified that their father died in 2017.

3

that he was aware of the lease in 2014 when he was an officer and board member of Northside, that he contacted an attorney to send a letter about the lease at that time, but that the principals of Northside made the decision not to pursue legal action about the enforceability of the lease at his "mother's request." He also testified that he "had no choice" but for KBCB to take title to the Property subject to the "lease encumbrance" if it was not voided. If the trial court granted his requested injunctive relief, Kent testified that he "would probably use [the Premises] as some kind of office for [his] growing business."

At the trial court's request, the parties filed post-hearing briefing. The parties joined issue over whether the four-corners rule applied to the lease, whether the trial court could consider extrinsic evidence of consideration, whether there was adequate consideration for the lease, and whether the trial court could take judicial notice of prior proceedings and evidence. Kent argued that the trial court could not consider Terry's declaration because it was not admitted as an exhibit during the hearing. In his post-hearing briefing, Terry asked the trial court to take judicial notice of prior proceedings and evidence and to admit Terry's declaration and Kent's deposition testimony for purposes of KBCB's application for temporary injunction.

In March 2022, the trial court denied KBCB's application for temporary injunction. In its order, the trial court stated that it considered the application, response, and the post-hearing arguments or briefing of counsel but did not otherwise provide the basis for its ruling. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).

4

**ANALYSIS**

In its sole issue, KBCB contends that the trial court abused its discretion "when it declined to temporarily enjoin a continuing trespass despite unrebutted evidence of [Terry's] unauthorized possession."

**Standard of Review and Applicable Law**

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) "a probable, imminent, and irreparable injury in the interim." *Id.* "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Id.*; *see Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet). The "status quo" is defined as "the last, actual, peaceable, non-contested status [that] preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction and its ruling is subject to reversal only for a clear abuse of that discretion. *See Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion." *Thompson*, 24 S.W.3d at 576; *see Butnaru*, 84 S.W.3d at 204 (stating

5

that appellate court may not substitute its judgment for that of trial court "unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion"). A trial court does not abuse its discretion if some evidence reasonably supports its decision. *See Thompson*, 24 S.W.3d at 576.

KBCB sought a temporary injunction based on its claim of trespass to real property. "Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). The Texas Supreme Court "has consistently defined a trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *Environmental Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015).

**Did the trial court abuse its discretion when it denied KBCB's application?**

*Evidence of the Lease*

At the outset, we address KBCB's assertion that because the lease was not admitted as an exhibit during the temporary injunction hearing, "[t]here is no lease in the record" and, therefore, KBCB's evidence was unrebutted that Terry did not have a lease and did not have authority to occupy or enter the Premises and that his use of the Premises was a continuing trespass. As support for its contention that its evidence was unrebutted, KBCB also relies on Terry's attorney's stipulation to "salient facts" and Terry's failure to personally appear for the hearing or call any witnesses.

The central focus of the temporary injunction hearing, however, was the validity and enforceability of the lease. During the hearing, KBCB's counsel represented to the trial

6

court that while Terry was Northside's president, he entered into the lease on behalf of himself and Northside for a five-year term with five renewal terms for "zero rent," and Terry's counsel stipulated to that fact. Kent also testified about the lease, including that he was aware of the lease's existence in 2014, and KBCB attached copies of the lease to multiple pleadings, including its application for temporary injunction and its third amended petition. Prior to the hearing, the trial court also had considered and denied KBCB's motion for partial summary judgment concerning the enforceability of the lease, and in its order denying KBCB's application for a temporary injunction, the trial court expressly stated that it considered the application, which included a copy of the lease as an attachment, and Terry's response to the application and his post-hearing briefing, which included a request for the trial court to take judicial notice of evidence and pleadings.

In this context, we presume that the trial court took judicial notice of its case file, including what had taken place in the case and the existence of the lease, and that it properly considered the lease. *See Thoele v. Texas Bd. of Pardons & Paroles*, No. 03-19-00826-CV, 2021 Tex. App. LEXIS 3518, at *9 (Tex. App.—Austin May 6, 2021, no pet.) (mem. op.) (stating that "trial court is 'presumed to judicially know what has previously taken place in the case tried before it,' and where record is silent (as here), 'may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so'" (quoting *In re J.E.H.*, 384 S.W.3d 864, 869–70 (Tex. App.—San Antonio 2012, no pet.))); *see also* Tex. R. Evid. 201 (governing judicial notice of adjudicative facts); *Gildon v. ARVM 5, LLC*, No. 02-19-00363-CV, 2020 Tex. App. LEXIS 7725, at *21–22 (Tex. App.—Fort Worth Sept. 24, 2020, no pet.) (mem. op.) (distinguishing exhibits from testimony and explaining that "court may take judicial notice of the existence of pleadings

7

and other documents that have been filed in a case," but not truth of allegations in documents unless admitted into evidence); *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539 (Tex. App.—San Antonio 2004, pet. denied) (stating that trial court generally may take judicial notice of its own records in case involving same subject matter and same parties).

*Irreparable Injury*

Presuming that the trial court took judicial notice of its case file including the existence of the lease and properly considered it, we turn to our analysis of whether the trial court reasonably could have found that KBCB did not meet its burden to plead and prove the three elements to be entitled to a temporary injunction. *See Butnaru*, 84 S.W.3d at 204 (requiring applicant to plead and prove cause of action against defendant, probable right to relief sought, and probable, imminent, and irreparable injury in interim). We limit our analysis to the "irreparable injury" component of the third element because it is dispositive. *See id.*; *see also* Tex. R. App. P. 47.1.

KBCB argues that "a continuing trespass of the kind shown is a probable, imminent, and irreparable injury supporting a temporary injunction"; that a "continuing invasion of property is inherently irreparable"; and that the "[i]nvasive possession of one's land is a special kind of harm not compensable with money." But KBCB sought damages of lost rental profits for Terry's alleged trespass, and in the context of this case, the trial court reasonably could have found that KBCB failed to show that this measure of damages would not adequately compensate it in the interim if KBCB is ultimately successful on its trespass claim. *See Butnaru*, 84 S.W.3d at 204 (stating that injury is irreparable if injured party cannot be adequately compensated in damages or if damages cannot be measured by certain pecuniary standard);

8

*see also Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 921–22 (Tex. 2013) (discussing recoverable damages for trespass claims).

KBCB also argues that seeking damages did not preclude injunctive relief, contending that "[it] is impossible for damages to be calculated while Terry continues occupying the land to the exclusion of the owner, and [Terry] might damage it while continuing to trespass." But it was KBCB's burden to prove irreparable injury, and it did not plead or present evidence that Terry had damaged or had plans to damage the Premises. *See Butnaru*, 84 S.W.3d at 204. Kent and his mother did not testify about concerns that the Premises were damaged or would be damaged. Kent testified that if the trial court granted his requested injunctive relief, he "would probably use [the Premises] as some kind of office for [his] growing business."

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court could have found that KBCB did not prove irreparable injury that would support its requested temporary injunction.[7] *See id.*; *Thompson*, 24 S.W.3d at 576; *see also Amend v. Watson*, 333 S.W.3d 625, 629 (Tex. App.—Dallas 2009, no pet.) (applying "well-settled Texas law" that movants were required to submit evidence to demonstrate probable, imminent, and irreparable injury from alleged trespass to support temporary injunction (citing *Butnaru*, 84 S.W.3d at 204)).

*Status Quo*

We further conclude that the trial court reasonably could have found that granting KBCB the injunctive relief it requested—preventing Terry from entering, occupying, or

---

[7] Because it was KBCB's burden to plead and prove each of the three elements to be entitled to temporary injunctive relief and we have concluded that the trial court reasonably could have found that KBCB failed to prove irreparable injury in the interim, we do not address whether KBCB proved its probable right to relief on its trespass claim. *See* Tex. R. App. P. 47.1.

permitting third parties to enter the Premises—would have improperly altered the status quo, not preserved it. "In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits." *Transport Co. v. Robertson Transports, Inc.*, 261 S.W.2d 549, 556 (Tex. 1953). The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d at 651. In this case, the trial court reasonably could have found that the status quo was Terry's use of the Premises under the terms of the lease. On its face, the lease reflects that it was signed in 2012, the parties stipulated that Terry signed the lease as tenant and as Northside's president, and the evidence at the temporary injunction hearing was undisputed that Terry had been using the Premises for his accounting business prior to and after signing the lease, that Kent was aware of the lease in 2014 and in 2019 when KBCB acquired the Property, and that Northside decided not to take legal action against Terry in 2014.

KBCB argues that Terry's use of the Premises is a continuing trespass and, therefore, "a wrongful invasion of property rights [that] does not give rise to the dignity of a status quo which deserves preservation." *See Speedman Oil Co. v. Duval Cnty. Ranch Co.*, 504 S.W.2d 923, 928–29 (Tex. App.—San Antonio 1973, writ ref'd n.r.e.) (stating that "unwarranted invasion of property does not create a status quo which must be protected pending a final trial"); *Patterson v. City of Bowie*, 295 S.W. 2d 676, 679–80 (Tex. App.—Fort Worth 1956, no writ) (same). But unless and until the lease is determined to be void or unenforceable, the lease authorizes Terry's use of the Premises. *See Barnes*, 353 S.W.3d at 764 (stating that trespass to real property is unauthorized entry upon land of another); *see also Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882 (Tex. App.—El Paso 2011, no

10

pet.) (stating that status quo cannot be violation of law but that when central question in suit is whether status quo is violation of law, "determination should generally be made with a full trial on the merits" (citing *In re Newton*, 146 S.W.3d at 652)); *Patterson*, 295 S.W.2d at 679 (stating that when issue is title and right to possession of real property, "temporary injunction is ordinarily available only to maintain the status quo").[8]

## CONCLUSION

For these reasons, we conclude that the trial court did not abuse its discretion in denying KBCB's application for a temporary injunction, overrule KBCB's issue, and affirm the trial court's order denying KBCB's application for temporary injunction.

_____

Rosa Lopez Theofanis, Justice

Before Justices Baker, Theofanis, and Jones*

Affirmed

Filed: May 19, 2023

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

---

[8] In reaching its decision to deny KBCB's application for temporary injunction, the trial court also reasonably could have considered KBCB's delay in seeking equitable relief. *See, e.g.*, *Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*, 919 S.W.2d 924, 927 (Tex. App.—Houston [14th Dist.] 1996, no writ) (explaining that equitable principles apply to request for injunctive relief and that movant "must have acted promptly to enforce its rights"). KBCB sued Terry in 2019 seeking a declaration that the lease was void but then waited a year and until after the trial court denied its motion for partial summary judgment on the validity of the lease before amending its petition to assert its trespass claim and to seek a temporary injunction.

11